## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| ANTHONY P. KINNEY, ) | |
| ) | Bankruptcy No. 16-00950 |
| Debtor. ) | |
| ) | |

| | |
|---|---|
| ) | |
| ANTHONY P. KINNEY, ) | |
| Plaintiff, ) | Adversary No. 16-09051 |
| ) | |
| v. ) | |
| ) | |
| NATIONAL COLLEGIATE MASTER ) | |
| STUDENT LOAN TRUST I, ) | |
| Defendant. ) | |

## RULING ON DISCHARGEABILITY OF STUDENT LOAN

This matter came before the Court for trial on August 31, 2018. Steve
Klesner appeared for Debtor Anthony Kinney ("Debtor"). Damian Richard
appeared Pro Hac Vice along with Lance Lange as local counsel for creditor
National Collegiate Master Student Loan Trust I ("Defendant"). This is a core
proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor cosigned on three student loans for his niece in 2006. Defendant
now holds two of those loans. One loan has an outstanding balance of over
$9,000. The other loan has a balance of over $19,000. Debtor is employed as a
factory worker in the plastics industry. He has a monthly take-home pay of

approximately $2,200.  Debtor's monthly expenses are approximately $1,700, but he currently lives with his Aunt and Uncle.  When Debtor is no longer able to live with his relatives his monthly expenses will increase to approximately $2,400.

Debtor argues that the student loans held by Defendant are not excepted from discharge under 11 U.S.C. § 523(a)(8) because he is a cosigner not the principal on the loans.  Alternatively, Debtor argues that the debt should be discharged under the "undue hardship" exception of that Code section.  The Court need not rule on Debtor's first argument because the undue hardship ruling is dispositive.  The Court finds that under the "totality of the circumstances" test, both loans held by Defendant would impose an undue hardship and are therefore dischargeable.

## STATEMENT OF THE FACTS

Debtor is 52 years old.  He currently lives in Des Moines, Iowa.  He is single and has several adult children but no dependents.  Debtor is employed as a factory worker with Midland Plastics Inc.  He works full-time and makes approximately $37,000 per year.

Debtor graduated from high school in 1984.  He joined the Army as a combat engineer.  After receiving an honorable discharge, Debtor found that the skills he learned in the Army did not directly translate into a civilian career. Debtor worked a variety of jobs until he settled into the plastics industry.  Since

2

beginning in the plastics industry in the 1990's Debtor has remained steadily employed.  He has received modest pay increases over the course of his career.  Debtor never pursued additional education or training beyond his high school degree.

Debtor currently lives with his Aunt and Uncle in Des Moines.  He moved in with his Aunt and Uncle over a year ago to save on living expenses while he was going through bankruptcy.  Debtor pays approximately $210 a month in rent plus an additional $100–200 in household expenses.  Debtor testified that his Aunt and Uncle, who are both retired and advanced in age, will not be able or willing to provide him housing long-term.  Debtor anticipates that he will need to find his own housing within the next year or two.  At that time his rent and utilities will likely increase to approximately $800 to $900 per month.  Debtor has no significant non-exempt assets.  His only savings consist of a 401(k) account with a little over $3,000 in it.

In 2006 Debtor's niece, Nicole Kinney, applied for several student loans including the two now held by Defendant.  To qualify for the student loans, Nicole needed a cosigner.  Nicole approached Debtor and asked him to cosign on her student loans.  Debtor testified that he knew that none of Nicole's other relatives could qualify as cosigners and he felt obligated to guarantee the debt.  Debtor cosigned on three loans, two of which are currently held by Defendant and are at

issue in this adversary.  The first loan had an original balance of $5,000 plus a

$586.59 fee at a 12.724% interest rate.  The second loan had an original balance of

$10,000 plus a fee of $1,173.18 at a 12.688% interest rate.  The parties do not

dispute that these loans were for educational purposes.

Nicole made some payments on the loans but eventually defaulted.  Nicole

filed for bankruptcy in May 2016.  According to the proof of claim filed by

Defendant in this bankruptcy, the balance on the first loan as of 2016 was

$9,093.70.  The balance on the second loan was $19,263.60.  Debtor has never

made a payment on these loans.

## CONCLUSIONS OF LAW AND ANALYSIS

Debtor makes two arguments in favor of a discharge.  He argues that the

exception to discharge for student loan debt under 11 U.S.C. § 523(a)(8) does not

apply to cosigners.  Debtor also argues for discharge asserting that continuing

liability on the debt would impose an "undue hardship" even if § 523(a)(8) applied.

### I.   Applicability of 11 U.S.C. § 523(a)(8) to Cosigners

Debtor first argues that 11 U.S.C. § 523(a)(8) does not prohibit cosigners

from discharging liability on student loan debt.  Debtor cites two cases from this

Court in support of his contention.  Nw. Univ. Student Loan Office v. Behr (In re

Behr), 80 B.R. 124 (Bankr. N.D. Iowa 1987); Zobel v. Iowa Coll. Aid Comm'n (In

re Zobel), 80 B.R. 950 (Bankr. N.D. Iowa 1986).  Behr and Zobel followed the

4

reasoning laid out in Boylen v. First Nat'l Bank of Akron (In re Boylen), 29 B.R.

924 (Bankr. N.D. Ohio 1983) and Washington v. Virginia State Educ. Assistance

Auth. (In re Washington), 41 B.R. 211 (Bankr. E.D. Va. 1984), two leading cases

on the issue of cosigner discharge at the time.  These cases all held that the

exception to discharge for student loans under 11 U.S.C. § 523(a)(8) did not apply

to non-student cosigners.

Defendant argues that Behr and Zobel have never been adopted by the

Eighth Circuit and they now represent a minority position.  See Christopher Soper

& Benjamin Nicolet, Statutory Interpretation Merry-Go-Round: Student Loan

Cosigner Discharge Then, Now and Later, 35-Aug. Am. Bankr. Inst. J. 22 (2016).

A string of cases from other courts, including the Third Circuit Court of Appeals,

have rejected the reasoning used in Boylen, Washington, Behr, and Zobel and

found that 11 U.S.C. § 523(a)(8) **does** apply to cosigners.  Id. at 23; In re

Pelkowski, 990 F.2d 737 (3rd Cir. 1993).

The state of the law in the Eighth Circuit regarding the applicability of

11 U.S.C. § 523(a)(8) to cosigners is not entirely clear.  Behr and Zobel have never

been formally rejected or abrogated, but many courts, including one within the

Eighth Circuit, have declined to follow their holdings.  Palmer v. Student Loan Fin.

Co. (In re Palmer), 153 B.R. 888, 890 (Bankr. D. S.D. 1993).  There is a question

5

of whether <u>Behr</u> and <u>Zobel</u> remain good law.  The Court need not resolve that question here because the undue hardship analysis is dispositive.

## II.   Undue Hardship

Student loan debt is not dischargeable in bankruptcy "unless excepting such debt from discharge. . . would impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. § 523(a)(8).  In the Eighth Circuit, discharging student loan debt is an all-or-nothing proposition, partial discharge is not an accepted practice is this jurisdiction.  <u>Conway v. Nat'l Collegiate Trust (In re Conway)</u>, 495 B.R. 416, 423 (8th Cir. B.A.P. 2013).  While the Court cannot discharge only part of a student loan, it can and must examine each loan separately.  <u>Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)</u>, 232 B.R. 127, 137 (8th Cir. B.A.P. 1999).  In doing so, the Court can conclude that one or more loans is dischargeable.  The Court here will consider all of Debtor's financial obligations in determining whether discharge is warranted, but the test for undue hardship must be applied to each loan separately.

Several categories of debt are excepted from discharge under 11 U.S.C. § 523.  Congress excepted student loans from discharge to prevent recent graduates from exploiting the bankruptcy system by discharging their loans when they are on their way to lucrative careers.  <u>Long v. Educ. Credit Mgmt. Corp. (In re Long)</u>, 322 F.3d 549, 553–54 (8th Cir. 2003).  Congress included an exception to the general

rule of non-dischargeability, however, in cases where a debtor could prove that their student debt imposed an "undue hardship."

The Code does not define "undue hardship" so courts have had to develop their own tests. A majority of circuits have adopted the test laid out in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987). Under the Brunner test the debtor must show that repaying her student loans would force her and her dependents below a "minimal standard' of living." Long, 322 F.3d at 554 (citing and quoting Brunner). The Eighth Circuit, however, follows the less demanding "totality of the circumstances" test. Conway, 495 B.R. at 419; Martin v. Great Lakes Higher Educ. Group (In re Martin), 584 B.R. 886, 891 (Bankr. N.D. Iowa 2018).

Under the "totality of the circumstances" test the Court examines "the unique facts and circumstances that surround the particular bankruptcy." Long, 322 F.3d at 554. The Court evaluates the debtor's undue hardship argument in light of three factors: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) the debtor's reasonable and necessary living expenses; and (3) any other relevant facts and circumstances." Id. The debtor has the burden to prove by a preponderance of the evidence that not discharging their student loan obligation would cause undue hardship. Educ. Credit Mgmt. Corp. v. Jesperson,

571 F.3d 775, 779 (8th Cir. 2009). The court addresses each of the three factors in the "totality of the circumstances" test.

### A. Debtor's Past, Present, and Reasonably Reliable Future Financial Resources

Under the first factor in the "totality of the circumstances" test, the Court must look at Debtor's "past, present, and reasonably reliable future financial resources." Long, 322 F.3d at 554. Debtor is employed full-time as a factory worker. He has remained steadily employed in the same industry for roughly two decades. During that time, he has received only minimal pay increases. He currently makes approximately $37,000 per year. He takes home approximately $2,160.00 per month after taxes and insurance. Debtor testified that he plans to continue in his current line of work if he can but is concerned because it is physically demanding and most of his coworkers are younger than him. Debtor also testified that, while he is capable of performing his current job, it is too taxing on him physically to pursue additional employment. Based on Debtor's testimony, his past work history, and his high school education, the Court finds Debtor's income will likely never significantly exceed $40,000 per year.

Debtor has no reasonably reliable financial resources other than his wages. Debtor's only assets of value are his vehicle and his 401k retirement account, which has a little over $3,000 in it. Debtor has no other savings or assets to draw on. Debtor testified at trial that he does not anticipate receiving any inheritance or

8

financial assistance from his family members.  The Court finds that Debtor's only

reasonably reliable future financial resource is his wage income.  The Court also

finds that Debtor's wage income is not likely to increase substantially above its

current level.

### B. Debtor's Reasonable and Necessary Living Expenses

The next factor the Court considers is Debtor's "reasonable and necessary

living expenses." Long, 322 F.3d at 554.  Debtor's expenses are reasonable and

necessary if they allow him to function at a "minimal standard of living." Abney v.

U.S. Dept. of Educ. (In re Abney), 540 B.R. 681, 686 (Bankr. W.D. Mo. 2015).

"A minimal standard of living requires that the debtor have sufficient financial

resources to satisfy needs for food, shelter, clothing and medical treatment." Id.

(internal quotation marks omitted).

Debtor listed the following monthly expenses in his affidavit:

Rent $210.00
TV/Internet $95.00
Food $400.00
Housekeeping supplies $25.00
Clothing $88.00
Personal care products $34.00
Car payment $272.00
Car gas and maintenance $150.00
Car insurance $138.00
Denture/extraction plan payments $250.00
Entertainment $50.00
Medical expenses $30.00

Debtor also listed several other expenses, including payments to his lawyer and loan repayments to his ex-mother in law to which Defendant objected. The Court will consider Debtor's expenses without including these disputed items. The total of the above listed expenses is $1,742.00. Debtor testified that in addition to these expenses he frequently covers utilities and other household expenses for his Aunt and Uncle.

The Court finds that all of the above expenses are necessary and reasonable. Debtor's expenses as listed, however, are not sufficient to show he can maintain a minimal standard of living and pay the loans. Debtor's choice to live with his Aunt and Uncle to save money while he was going through bankruptcy was financially responsible, but it is not sustainable. Debtor is 52 years old and his Aunt and Uncle are both elderly. They are not willing or able to house him indefinitely. In considering Debtor's budget, the Court includes an increase necessary to allow him to secure stable long-term housing once he is no longer able to live with his Aunt and Uncle.

Debtor testified that before moving in with his Aunt and Uncle he lived in a small house in the same neighborhood. He paid between $500 and $600 per month in rent. Debtor estimated that if he were to rent his own place in Des Moines in the future, his rent and utilities would likely be between $800 and $900 per month. The Court finds this estimate to be reasonable. Accounting for Debtor's likely

10

increased future housing expenses, his total budget is $2,432.00 per month.

Debtor's current take-home pay is $2,160 per month.  Thus, there is already a

deficit of $272 per month without including student loan payments.

The Court also notes that Debtor is 52 years old, works in a physically

demanding job, and has only approximately $3,000 in his retirement account.

Assuming Debtor maintains his current salary and one percent retirement

contribution, he will have approximately $8,000 in retirement savings by the time

he is 65.  Debtor also has no savings.  In the event he is injured and unable to

continue working in his current position, he is in a very precarious financial

situation.

### C. Other Relevant Facts and Circumstances

The only other factor relevant to the Court's determination of undue

hardship is Debtor's status as a cosigner.  While this question has no legal bearing

on this Court's undue hardship determination, it becomes relevant factually.

Courts must generally consider the educational benefit obtained and the effect on

the debtor's future earning capacity.  In this case, Debtor as a cosigner received no

educational benefit.  This lack of educational benefit thus cuts against prohibiting

discharge of the loan.

After considering Debtor's past, present, and reasonably reliable future

financial resources, his reasonable and necessary living expenses, and other

relevant facts and circumstances, the Court finds that any monthly loan payment on

his niece's student loans would result in undue hardship on Debtor.  Having found

that Debtor has no capacity to make loan payments, the Court finds that requiring

Debtor to repay either of the two loans at issue in this case would result in an

undue hardship.  As such, the Court finds that Debtor's obligation on both loans

held by Defendant are dischargeable.

## CONCLUSION

**WHEREFORE**, Debtor's Complaint to Determine Dischargeability of Debt

is GRANTED.  Debtor's cosigner obligation on his niece's student loans is

dischargeable.

Dated and Entered:

December 5, 2018

_____

THAD J. COLLINS

CHIEF BANKRUPTCY JUDGE